UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BENITO LENDOF-GONZALEZ,

Petitioner,

v.

SUPT. JOHNSON,

Respondent.

Case # 20-CV-06924-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Petitioner Benito Lendof-Gonzalez commenced this habeas proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") on October 23, 2020, while serving consecutive sentences imposed pursuant to two judgments of conviction entered in New York State, Niagara County Court (Michalski, A.J.). The first judgment was entered on September 19, 2017, following a jury verdict convicting Petitioner of second-degree criminal solicitation (New York Penal Law ("P.L.") § 100.10) in satisfaction of Niagara County Indictment No. 2016-219. The second judgment was entered on January 18, 2018, following Petitioner's guilty plea to one count of second-degree criminal contempt (P.L. § 215.50(3)) and one count of second-degree criminal solicitation (P.L. § 100.10), in satisfaction of Niagara County Indictment Nos. 2016-184 and 2016-432. For the reasons set forth below, the request for a writ of habeas corpus is DENIED, and the Petition, ECF No. 1, is DISMISSED.

## BACKGROUND

### I. Summary of the Three Indictments

As an initial matter, the Court notes that Respondent has only provided the state court records and transcripts pertaining to Indictment No. 2016-219. *See* ECF Nos. 7 (State Court Records) & 7-1 (State Court Transcripts). The only records the Court has regarding Indictment

No. 2016-184 were provided by Petitioner in ECF No. 1-1[1] and ECF No. 3.[2] The Court does not have any copies of records regarding Indictment No. 2016-432 but has gleaned some information about it from motion papers filed by trial counsel and the prosecutor in connection with the proceeding on Indictment No. 2016-219. ECF No. 7 at 27, 57, 61.

First, Indictment No. 2016-184, was returned on May 11, 2016, charging Petitioner with second-degree strangulation, second-degree kidnapping, second-degree unlawful imprisonment, and second-degree criminal contempt. The first three counts were based on Petitioner's alleged assault of his wife on April 21, 2016. The fourth count was based on Petitioner's violation, on April 24, 2016, of a court order of protection in favor of his wife.

Second, Indictment No. 2016-219, was issued on June 17, 2016, charging Petitioner with four counts of attempted first-degree murder, two counts of attempted second-degree murder, and one count of second-degree criminal solicitation. These charges concerned Petitioner's solicitation of a fellow detainee at the Niagara County Jail to murder his wife and her mother so they could not testify against him in connection with Indictment No. 2016-184. The events in Indictment No. 2016-219 occurred on May 16, 17, 18, 19, 20, and 24, 2016, when Petitioner was detained on the charges in Indictment No. 2016-184.

Third, Indictment 2016-432, was filed against Petitioner on February 1, 2017. ECF No. 7 at 27. It involved a September 2016 plot by Petitioner to escape from the Niagara County Jail by

---

[1] The Exhibits consist of the Uniform Sentence & Commitment dated January 18, 2018 ("Exhibit A"); Superior Court Information No. 2016-184-A regarding a domestic violence incident on April 21, 2016; Indictment No. 2016-184 regarding the April 21, 2016 incident; and the Certificate of Disposition regarding SCI 2016-184-A (collectively, "Exhibit C"); Indictment No. 2016-219 ("Exhibit D"); and a copy of the Appellate Division's decision ("Exhibit E"). There is no document labeled as Exhibit B in ECF No. 1-1.

[2] The only documents provided to the Court regarding this judgment of conviction by guilty plea are (1) the attachments to Petitioner's letter dated November 12, 2020, ECF No. 3, which consist of pages 1, 10, and 11 from the transcript of a November 2, 2017 plea hearing before Niagara County Court Judge Michalski on Indictment Nos. 2016-184-A and 2016-432-A.

soliciting a third-party to attack a transport vehicle, kill the transporting officers, and free Petitioner. ECF No. 7 at 57, 61. A copy of this indictment is not in the records provided to the Court.

## II. The Trial on Indictment No. 2016-219

### *A. Summary of the People's Case*

On May 16, 2016, while detained at the Niagara County Jail, Petitioner overheard a fellow inmate, "MS," talking with his girlfriend on the jail's communal phone about their financial problems, impending eviction, and MS's upcoming release on bail. Petitioner and MS were housed in adjacent cells. When MS returned to his cell, Petitioner slipped him a note, promising to give MS the deed to a house if he did two things for him. MS wrote back and asked what he had to do.

A few minutes later, Petitioner passed a note saying first, he needed MS to kill his wife and her mother with heroin and other drugs. Second, he needed MS to arrange for his children's care. MS kept that note and passed a new note asking for information about the targets. The two passed several additional notes back and forth in which Petitioner provided further instructions on the best time to commit the murders, where to park, and where the house key was hidden on the porch. He instructed MS in detail how to kill the victims by means of heroin poisoning and how to arrange the crime scene to make it look as though they had overdosed on drugs. He also gave MS a map to the friend's home where his children were to be brought and a letter to give to the friend.

MS immediately contacted jail authorities and informed them he had information about a serious crime. MS met with jail officials and provided the notes from Petitioner. He then returned to his cell and acted as though the plan would proceed. The next day, May 17, 2016, MS met with an assistant district attorney and provided the rest of the notes he had received. On May 18, 2016,

MS was released on bail. The following day, at Petitioner's request, MS visited him at the jail.[3] Petitioner showed him a fake suicide letter that he wanted MS to force Petitioner's wife to handwrite before he killed her. Petitioner said he would call MS the next day to confirm that MS had committed the murders.

On May 20, 2016, Petitioner called MS, who was with law enforcement officers recording their conversation. Using their prearranged code, MS stated that the "cars" (the targets) had been "fixed" (killed) and that he had the "tires" (the children) with him. In reality, however, MS had done nothing to effectuate the murders. On May 24, 2016, Petitioner unexpectedly called MS on MS's girlfriend's cell phone. MS again confirmed for Petitioner that he had committed the murders.

At the close of the prosecution's case, trial counsel moved to dismiss all counts of the indictment on the basis that there was legally insufficient evidence to support them. The trial court denied the motion but noted that the prosecution's case just barely survived dismissal. The defense did not call any witnesses at trial.

*B. The Verdict and Sentence*

The jury returned a verdict acquitting Petitioner of one count of attempted first-degree murder and convicting him of the remaining two counts of attempted first-degree murder, the two counts of attempted second-degree murder, and the count of second-degree criminal solicitation. Trial counsel moved to set aside the verdict, raising the same legal-insufficiency argument. The trial judge dismissed the motion, again noting that the issue was extremely close. On September 19, 2017, the trial judge sentenced Petitioner to an aggregate term of 17 years to life in prison.

---

[3] MS was wearing a recording device provided by the police; however, after a hearing, the recording was ruled to be inaudible.

*C. The Direct Appeal*

Represented by new counsel, Petitioner appealed. On March 15, 2019, the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") unanimously modified the judgment on the law by vacating the convictions for attempted first-degree murder (P.L. §§ 110.00, 125.27(1)(a)(vi); (b)) and attempted second-degree murder (P.L. §§ 110.00, 125.25(1)) and dismissing those four counts of the indictment. *People v. Lendof-Gonzalez*, 170 A.D.3d 1508, 1510 (4th Dep't 2019). The Appellate Division agreed that the evidence supporting the four attempted murder convictions was legally insufficient because it failed to establish that Petitioner engaged in conduct that came "dangerously near commission of the completed crime." 170 A.D.3d at 1510-11 (quotation omitted; internal quotation marks omitted in original). The remaining contentions raised in Petitioner's counseled and *pro se* briefs were rejected as moot, without merit, or not properly raised on direct appeal. *Id.* at 1511-12.

Petitioner and the prosecution each sought leave to appeal. In a four-three opinion, the New York Court of Appeals affirmed the Appellate Division's decision on November 24, 2020. *People v. Lendof-Gonzalez*, 36 N.Y.3d 87 (2020).

## III. The Guilty Plea and Sentence on Indictment Nos. 2016-184 and 2016-432

On November 2, 2017, Petitioner appeared before Judge Michalski with the attorney who had represented him at trial. ECF No. 3 at 2. Petitioner entered guilty pleas to one count of second-degree criminal solicitation and one count of second-degree criminal contempt in satisfaction of Indictment No. 2016-432 and Indictment No. 2016-184, respectively. *Id.* at 3-4. It appears that Petitioner waived his right to appeal as part of the plea agreement. *Id.*

On January 18, 2018, Petitioner was sentenced to a term of 2 1/3 to 7 years in prison, to be served consecutively to the sentences previously imposed on Indictment No. 2016-219. ECF No.

1-1 at 1. There is no indication that he appealed this judgment of conviction or challenged it in a collateral proceeding.

## IV. The Federal Habeas Petition

On October 23, 2020, while his direct appeal was still pending, Petitioner filed a form Section 2254 application, ECF No. 1, along with Exhibits, ECF No. 1-1. Petitioner asserts multiple claims under the blank sections of the form Petition, labeled "Ground One," "Ground Two," and "Ground Three." Under Ground One, he asserts he was denied a fair trial due to the prosecutor's presentation of inclusory concurrent counts at the grand jury (Ground 1(a)); the trial court erroneously failed to instruct the jury, in accordance with New York Criminal Procedure Law ("C.P.L.") § 300.40(3)(b), that the "lesser included charges were alternative to the top count charged" (Ground 1(b)); and trial counsel was ineffective in failing to move to dismiss the "lesser murder counts, and once on verdict sheet, move to dismiss top count, required by request" (Ground 1(c)). *See* ECF No. 1 at 6.

Under Ground Two, he claims that the "(DA), Judge, manufacture[d] indictments, without any grand jury notice, C.P.L. [§] 190.50(5)(A), numerous filed indictments, deleted, defective felony complaints, (C.P.L. § 100.15(3)), and grand jury/indictments (C.P.L. §§ 210.25, 210.35(c))." ECF No. 1 at 8. According to Petitioner, trial counsel and appellate counsel were ineffective because they failed to challenge these errors. The Court will refer to the claim of prosecutorial misconduct in the grand jury as Ground (2)(a), the claim of ineffective assistance of trial counsel as Ground 2(b), and the claim of ineffective assistance of appellate counsel as Ground 2(c).

Finally, under Ground Three, Petitioner states that he was "denied consequences [sic] of deportation by court/district attorney & lawyers." ECF No. 1 at 9.

On November 12, 2020, Petitioner sent a letter to the Court with the subject "addendum/exhibit in support of [illegible] application," ECF No. 3 at 1, asking that several pages of the transcript of his November 2, 2017 plea hearing on Indictment Nos. 2016-184 and 2016-432 be added to the Petition. ECF No. 3 at 2.

Respondent filed a Response, ECF No. 6, and Memorandum of Law in Opposition, ECF No. 6-1, along with the state court records as to the conviction obtained under Indictment No. 2016-219, *see* ECF No. 7 and 7-1. Respondent characterizes the Petition as raising claims based solely on Indictment No. 2016-219. Respondent asserts that all of the claims are unexhausted but must be deemed exhausted and procedurally defaulted because they are record-based claims that were required to have been raised on direct appeal. Alternatively, Respondent contends, the claims are not cognizable on federal habeas review, without merit, or both.

Petitioner did not file any reply papers.

## DISCUSSION

### I. Characterization of the Claims in the Petition

The Court agrees with Respondent that Grounds One and Two logically pertain to the conviction obtained on Indictment No. 2016-219.

For Ground Three, Petitioner states, as noted above, that he was "denied consequences [sic] of deportation by court/district attorney & lawyers." ECF No. 1. Respondent assumes that Ground Three also involves Indictment No. 2016-219, and interprets it as asserting that "he should have been deported," which "does not state a claim for federal habeas relief." ECF No. 6-1 at 14. While Ground Three is indeed "difficult to discern," *id.*, it does not seem likely that Petitioner would be complaining about *not* being removed from this country.

Construing Petitioner's *pro se* pleadings liberally to raise the strongest arguments they suggest, the Court believes that Petitioner is attempting to assert a claim under *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the petitioner claimed that his defense attorney was ineffective because he provided erroneous advice regarding the severe immigration consequences of accepting the guilty plea offered by the government. *Id.* at 359. The Supreme Court held that the Sixth Amendment right to the effective assistance of competent counsel requires a criminal defendant's attorney to provide advice about the risk of deportation arising from a guilty plea. *See id.* at 360, 374; *see also Chaidez v. United States*, 568 U.S. 342, 344 (2013) (holding that *Padilla* does not have retroactive effect).

The Court further finds that Ground Three is intended to challenge the 2018 conviction because Petitioner has supplied the Court with excerpts of the plea transcript, and *Padilla* only applies to convictions obtained by guilty plea. *See*, *e.g.*, *Vazquez v. Dep't of Homeland Sec.*, No. 8:11-CV-1274-T-23AEP, 2012 WL 3062139, at *2 (M.D. Fla. July 26, 2012) ("Vazquez alleges that counsel failed to advise him about the risk of removal following his conviction. . . . *Padilla is* inapplicable because Vazquez was convicted based on a non-jury trial. Trial counsel's obligation under *Padilla* applies only when the defendant pleads guilty."). Therefore, the Court does not agree with Respondent that Ground Three challenges Petitioner's September 19, 2017 conviction following a jury trial.

## II. Subject Matter Jurisdiction

Respondent notes that Petitioner was released from state custody on December 17, 2020 and placed in federal custody pending completion of his deportation proceedings. ECF No. 6-1 at 1. The online Inmate Lookup service maintained by New York State Department of Corrections

and Community Supervision corroborates Respondent's assertion.[4] On December 30, 2020, Petitioner filed a notice of change of address with the Court, listing a residential address. See ECF No. 5. Therefore, it does not appear that Petitioner is still in immigration detention at this time.

Petitioner's release from state custody raises threshold jurisdictional issues which the Court must resolve, notwithstanding the fact that neither party has mentioned them. *See*, *e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.") (citation omitted).

*A. The "In Custody" Requirement*

"[T]he 'in custody' language of § 2254(a) is jurisdictional and requires that habeas petitioners be in custody under a state conviction or sentence when they file for habeas relief[.]" *Ogunwomoju v. United States*, 512 F.3d 69, 75 (2d Cir. 2008). However, § 2254(a) requires only that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time the petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *accord Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding that the "in custody" provision only requires that the petitioner be in custody at the time the petition is filed).

Although Petitioner has completed his sentence and was released from state custody on December 17, 2020, he was still "in custody" pursuant to the conviction he challenges at the time he filed the Petition on October 23, 2020. Therefore, he satisfies the "in custody" requirement of Section 2254. *See*, *e.g.*, *Barnard v. Burbary,* 452 F. Supp. 2d 178, 184 (W.D.N.Y. 2006) (where petitioner was in prison when he filed the petition challenging his state court conviction, he met

---

[4] *See* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (listing Petitioner's status as "released" and "latest release date/type" as "12/17/20 Parole U.S. Immigration") (last accessed Apr. 7, 2021).

Section 2254(a)'s "in custody" requirement even though he was released from prison prior to district court's decision on his petition) (citing *Wheel v. Robinson*, 34 F.3d 60, 63 (2d Cir. 1994)).

*B. Mootness*

"As with all litigants in federal court, a habeas petitioner must satisfy the case or controversy requirement of Article III, § 2, of the Constitution in order to be eligible for relief. A case becomes moot if, at any stage of the proceedings, it fails to satisfy the case-or-controversy requirement." *Burch v. Millas*, 663 F. Supp. 2d 151, 157 (W.D.N.Y. 2009) (citing *Kamagate v. Ashcroft*, 385 F.3d 144, 150 (2d Cir. 2004); *Spencer*, 523 U.S. at 7) (additional citations omitted). "A prisoner's challenge to the validity of his conviction always satisfies the 'case or controversy' requirement of Article III because the incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Burch*, 663 F. Supp. 2d at 157 (W.D.N.Y. 2009) (citing *Spencer*, 523 U.S. at 7). "However, when the prisoner's sentence has expired, some concrete and continuing injury other than the now-ended incarceration—that is, some 'collateral consequence' of the conviction—must exist if the petition is to remain justiciable." *Id.* (citing *Spencer*, 523 U.S. at 7; *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)).

"The Supreme Court has held that collateral consequences are presumed to flow from a felony conviction such as the one at issue here, such that [P]etitioner's release from custody does not moot the habeas petition." *Burch*, 663 F. Supp. 2d at 157 (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968); *Spencer*, 523 U.S. at 8, 12 (declining to depart from *Sibron*'s presumption that "a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)")) (additional citation omitted). As noted above, after direct appeal, Petitioner's sole remaining conviction under Indictment No. 2016-219 is for second-degree criminal solicitation, a class D felony. Because

Petitioner challenges a felony conviction in the Petition, he may rely on the *Sibron* presumption of collateral consequences. *Burch*, 663 F. Supp. 2d at 157 (citing *Spencer*, 523 U.S. at 7-8) (additional citation omitted). Accordingly, notwithstanding his release from incarceration, the Petition presents a justiciable "case or controversy" for purposes of conferring subject matter jurisdiction. *Id.*; *see also*, *e.g.*, *Geraci v. Sheriff, Schoharie Cty. Jail*, No. 9:99-CV-0405(GLS), 2004 WL 437466, at *2 (N.D.N.Y. Feb. 20, 2004) ("[T]he collateral consequences which still exist as a result of his felony conviction preclude a finding that this matter is moot.") (citing *Spencer*, 523 U.S. at 12) (footnote and additional citation omitted).

## III. Exhaustion and Procedural Default

Respondent argues that Petitioner has failed to present the factual and legal grounds for any of his habeas claims to the highest New York state court from which review is available, and therefore they are unexhausted. Respondent further contends that this Court should deem the claims exhausted and procedurally defaulted because, if Petitioner were to assert them in state court, they would be rejected as procedurally barred under state law. Petitioner admits that he did not exhaust his state remedies as to any of the claims listed under Grounds One, Two, and Three.

As discussed further below, the Court finds that the claims raised in Ground One are moot, while the claims in Ground Three are untimely. Resolution of these more fundamental issues obviates the need to address exhaustion and procedural default.

With regard to Ground Two, it is not clear that the claims of prosecutorial misconduct and ineffective assistance of counsel in connection with the grand jury proceeding and subsequent indictment are entirely apparent on the record such that they were required to have been raised on direct appeal and would be barred from further presentation to the state courts by means of a collateral motion to vacate. *See*, *e.g.*, *People v. Powell*, 913 N.Y.S.2d 468, 469 (4th Dep't 2010)

("[D]efendant further contends that the court erred in failing to dismiss the indictment based on prosecutorial misconduct during the grand jury proceedings. We are unable to review that contention because it involves matters that are outside the record on appeal, and thus that contention is not properly before us.") (collecting cases). Accordingly, it is possible that the claims in Grounds 2(a) and 2(b) are not procedurally defaulted as a result of Petitioner's forfeiture of them in state court. *See*, *e.g.*, *Morgan v. Lee*, No. 1:11-CV-0390 MAT, 2012 WL 5336167, at *6 (W.D.N.Y. Oct. 26, 2012) (where habeas claims were "based on facts *dehors* the record," the petitioner was "not procedurally barred by C.P.L. § 440.10(2)(c) from filing a collateral motion to vacate the judgment") (citing *Simms v. Moscicki*, No. 06 Civ.2056(DLC)(AJ), 2006 WL 2466811, at *10 (S.D.N.Y. Aug. 25, 2006) (collecting cases)).

Assuming the claims in Grounds 2(a) and 2(b) are unexhausted, the Court has discretion to deny them pursuant to 28 U.S.C. § 2254(b)(2). *See Gandarilla v. Artuz*, 322 F.3d 182, 186 (2d Cir. 2003) ("Gandarilla's petition contained unexhausted claims, not all of which were procedurally barred. Under AEDPA, the district court has the authority to deny a habeas petition 'on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'") (quoting 28 U.S.C. § 2254(b)(2)).[5] Because the claims in Grounds 2(a) and 2(b) may be readily dismissed on alternative grounds, as discussed below, the Court will exercise its discretion to bypass the issues of exhaustion and procedural default. *See*, *e.g.*, *Lewis v. Brown*, No. 10-CV-0796 MAT, 2011 WL 6148938, at *3 (W.D.N.Y. Dec. 12, 2011) ("Respondent asserts that Petitioner's claims are unexhausted, and/or procedurally defaulted and, in any event, not

[5] "The rationale behind 28 U.S.C. § 2254(b)(2) has been described as 'spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion.'" *Nickels v. Conway*, No. 1:10-CV-0413 MAT, 2015 WL 4478970, at *18 (W.D.N.Y. July 22, 2015) (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)). "In this Circuit, the various formulations for the proper standard to be used share 'the common thread of disposing of unexhausted claims that are unquestionably meritless.'" *Id.* (quoting *Keating*, 708 F. Supp. 2d at 299 n.11).

cognizable on habeas review. Because Lewis's petition may be readily dismissed on substantive grounds, the Court has exercised its discretion to bypass the exhaustion issue and deny the petition on the merits.") (citing *Boddie v. New York State Div. of Parole*, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003)) (other citation omitted).

Respondent has not addressed Ground 2(c), the ineffective assistance of appellate counsel claim, which appears to be fully unexhausted. Because Petitioner still could raise appellate counsel's ineffectiveness in an application for a writ of error *coram nobis* filed in the Appellate Division, Ground 2(c) may not be deemed exhausted and procedurally defaulted. *See*, *e.g.*, *Dominique v. Artus*, 25 F. Supp. 3d 321, 339 (E.D.N.Y. 2014) (claim that appellate counsel was ineffective for failing to seek leave to appeal to the New York Court of Appeals without consulting the petition was unexhausted because it could be brought in a successive *coram nobis* application) (citation omitted). Nonetheless, Ground 2(c) also may be dismissed in the Court's discretion pursuant to 28 U.S.C. § 2254(b)(2). *See*, *e.g.*, *id.* (denying unexhausted ineffective assistance of appellate counsel claim pursuant to 28 U.S.C. § 2254(b)(2) because it was "plainly meritless").

*A. Ground One: The Claims Related to the Inclusory Concurrent Counts Are Moot*

In Ground One, Petitioner asserts several claims related to what are known as "inclusory concurrent counts" under New York state law. '"Concurrent counts are 'inclusory' when the offense charged in one is greater than any of those charged in the others and when the latter are all lesser offenses included within the greater.'" *People v. Miller*, 6 N.Y.3d 295, 300 (2006) (quoting N.Y. Crim. Proc. Law § 300.30(4)). Petitioner appears to be correct that the two counts of attempted second-degree murder were inclusory concurrent counts of the two counts of attempted first-degree murder. *People v. Fermin*, 55 N.Y.S.3d 286, 292 (2d Dep't 2017).

"Where multiple counts, including inclusory concurrent counts, are submitted to a jury, '[a] verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted[.]'" *Id.* (quoting N.Y. Crim. Proc. Law § 300.40(3)(b)). The remedy is such cases is reversal of the inclusory concurrent counts. *Id.* ("[T]he defendant's convictions of attempted murder in the second degree and the sentences imposed thereon must be vacated [pursuant to C.P.L. § 300.40(3)(b)] and those counts of the indictment must be dismissed."). Here, Petitioner's convictions on the inclusory concurrent counts—i.e., the two counts of attempted second-degree murder—were vacated on direct appeal. *Lendof-Gonzalez*, 170 A.D.3d at 1508. Petitioner thus received all of the relief to which he would have been entitled pursuant to C.P.L. § 300.40(3)(b).

"[U]nder the general rule of mootness, courts' subject matter jurisdiction ceases when an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Cty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (internal quotations omitted). With the inclusory concurrent counts already vacated, there is no remaining relief that this Court could provide Petitioner via a writ of habeas corpus. Accordingly, the claims in Ground One are moot, and the Court lacks jurisdiction over them. *See Fisher v. Superintendent*, No. 12 CIV. 6703 JPO, 2014 WL 128015, at *7 (S.D.N.Y. Jan. 14, 2014) ("The Appellate Division's order vacating Fisher's first plea and reversing the judgment of conviction rendered a habeas petition as to that conviction moot.") (citations omitted); *Moloi v. Riley*, 762 F. Supp. 36, 39 (E.D.N.Y. 1991) (finding habeas claim moot because the conviction on which claim was based had already been vacated on direct appeal).

*B. Ground Two: The Claims Related to Defects in the Grand Jury and Indictment*

1. The Claims of Prosecutorial Misconduct in the Grand Jury Asserted in Ground 2(a) Are Not Cognizable on Habeas Review

In Ground Two, Petitioner contends that the prosecutor failed to serve the defense with notice of the grand jury proceeding,[6] presumably so that he could exercise his right to testify. This assertion is belied by the record, since at a pre-trial appearance, trial counsel acknowledged receiving "a copy of the indictment and the notices" from the prosecutor. ECF No. 7 at 2-3. Petitioner also cites several sections of New York's Criminal Procedure Law relating to defects in the felony complaint, C.P.L. § 100.15(3); motions to dismiss based on defects in the indictment, C.P.L. § 210.25; and motions to dismiss based on defects in the grand jury, C.P.L. § 210.35(c).

Petitioner, however, fails to identify any particular defects in the felony complaint, indictment, or grand jury proceeding that actually would warrant relief under the above-cited sections of New York's Criminal Procedure law. It is well-settled that "[s]uch vague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief." *Skeete v. People of New York State*, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) (citing *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir. 1987) (court may deny habeas petition when asserted claims are merely vague or conclusory)).

---

[6] Although Petitioner states that the prosecutor failed to provide notice under C.P.L. § 190.50(5)(a), that section sets forth the notice obligations of a *defendant* who wishes to testify before the grand jury. *See* N.Y. Crim. Proc. Law § 190.50(5)(a) ("[A defendant] has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment or any direction to file a prosecutor's information in the matter, he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent."). The Court assumes that Petitioner is referring to C.P.L. § 190.50(5)(b), which provides that once a prosecutor receives notice from a defendant under C.P.L. § 190.50(5)(a), he or she must serve upon the defendant, "at the address specified," a notice that he or she "will be heard by the grand jury at a given time and place." N.Y. Crim. Proc. Law § 190.50(5)(b).

Moreover, Petitioner's claims of prosecutorial misconduct in connection with the grand jury proceeding are not cognizable on federal habeas review. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" were "cured in the trial before the petit jury, which convicted") (citing *United States v. Mechanik*, 475 U.S. 66, 68 (1986)). The Second Circuit explained in *Lopez* that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Id.* (citing *Mechanik*, 475 U.S. at 68 (petit jury's guilty verdict necessarily renders any irregularities before the grand jury harmless for it establishes not only probable cause to indict, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt")). Accordingly, the claims in Ground 2(a) warrant dismissal for the additional reason that they are not cognizable on habeas review. *E.g.*, *Campbell v. Poole*, 555 F. Supp. 2d 345, 367-68 (W.D.N.Y. 2008).

2. The Claims of Ineffective Assistance of Trial Counsel Asserted in Ground 2(b) Are Plainly Meritless

The Court interprets Ground 2(b) as asserting that trial counsel failed to ensure Petitioner's opportunity to testify before the grand jury and failed to move to dismiss the indictment based on the prosecutor's errors alleged in Ground 2(a). Assuming these claims are unexhausted, they are appropriately dismissed under the authority provided in 28 U.S.C. § 2254(b)(2) because they are plainly without merit.

In order to prevail on a claim that his trial counsel was not constitutionally effective within the meaning of the Sixth Amendment, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional

norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id.* at 694. The performance and prejudice prongs of *Strickland* may be addressed in either order; "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Even assuming that Petitioner in fact requested to appear and testify before the grand jury—which is not apparent from his Petition—trial counsel's failure to secure his state-law right to testify before the grand jury "does not, by itself, establish ineffective assistance of counsel." *Kohler v. Kelly*, 890 F. Supp. 207, 213 (W.D.N.Y. 1994) (citing *People v. Hunter*, 564 N.Y.S.2d 391 (1st Dep't 1991)) (other citation omitted); *accord Davis v. Mantello*, 42 F. App'x 488, 491 n.1 (2d Cir. 2002) (unpublished opn.) (citations omitted). Significantly, Petitioner fails to provide any detail about what he would have told the grand jury, which makes it impossible to find that he was actually prejudiced by his failure to testify. Given the amount of evidence the prosecution already possessed, combined with the undemanding burden of proof applicable in the grand jury, there is no reasonable possibility, let alone reasonable probability, that Petitioner would not have been indicted even if he had testified. Indeed, there does not appear to have been any benefit to Petitioner testifying in the grand jury. Among other risks, he would have exposed himself to cross-examination and could have been questioned about his previous crimes. Thus, the Court cannot say it was unreasonable for trial counsel to have decided that testifying before the grand jury was not in Petitioner's best interest. *See Kohler*, 890 F. Supp. at 213-14. Petitioner's complaint about trial counsel's performance in this regard is plainly meritless and will be dismissed.

Insofar as he fails to identify any specific defects that would have led to dismissal of the indictment, Petitioner's claims that trial counsel should have challenged the felony complaint,

indictment, and grand jury are impermissibly vague and conclusory. Accordingly, summary dismissal of these claims is warranted. *See United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970) (stating that a habeas claim may be denied where the supporting "allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous").

3. The Ineffective Assistance of Appellate Counsel Claim in Ground 2(c) Is Plainly Meritless

Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *E.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). A petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

Here, the claims that Petitioner believes appellate counsel should have raised—unspecified defects in the felony complaint, indictment, and grand jury proceeding—were "clearly and significantly weaker" than the arguments actually raised in counsel's brief, one of which persuaded the appellate courts to reverse of all four Class A-1 felony convictions and dismiss those counts. Given the highly favorable results achieved by appellate counsel, Petitioner cannot demonstrate that appellate counsel failed to provide effective advocacy or that he was prejudiced by counsel's omission of vague and conclusory claims. Ground 2(c) is plainly meritless and should be dismissed. *See Nickels*, 2015 WL 4478970, at *18 (dismissing unexhausted ineffective assistance of appellate counsel claim that were "simply conclusory allegations without supporting facts").

C. *Ground Three: The Claims Related to the Conviction Under Indictment Nos. 2016-184 and 2016-432 Are Untimely*

"[A] prisoner must file a habeas petition challenging a state court judgment of conviction within one year of the date the judgment of conviction becomes final." *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (*per curiam*) (citing 28 U.S.C. § 2244(d)(1)(A)).[7] Under 28 U.S.C. § 2244(d)(2), "the limitations period is tolled during the pendency of a properly filed petition for collateral review in state courts[.]" *Id.* (citation omitted). "To be eligible for equitable tolling, a petitioner must demonstrate 'extraordinary circumstances beyond his control' that prevented him from timely filing his petition." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (quoting *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003); internal quotation marks omitted in original).

After judgment was entered on January 18, 2018, Petitioner had 30 days in which to file a notice of appeal. N.Y. Crim. Proc. Law § 460.10(1)(a). He failed to do so. His conviction therefore became final on February 19, 2018,[8] when he forfeited his right to appeal by failing to file a timely notice of appeal. *Green v. Mazzucca*, No. 00-CV-0996 (JBW), 2003 WL 21817292, at *3 (E.D.N.Y. July 23, 2003) (citing *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (*per curiam*) (finding that the one-year limitations period began running when petitioner's time for filing a notice of appeal from his judgment of conviction expired under C.P.L. § 460.10(1)), *aff'd*, 377

[7] The later start-dates set forth in subsections (B), (C), and (D) of 28 U.S.C. § 2244(d)(1) are inapplicable in Petitioner's case because he does not assert that a state-created impediment prevented him filing earlier; he does not rely on a constitutional right that the Supreme Court has made retroactively applicable on collateral review; and his claim does not rely on a factual predicate that could not have been discovered sooner despite due diligence.

[8] Because the expiration of the 30-day period fell on February 17, 2018, a Saturday, Petitioner's judgment of conviction became final on the next business day, Monday, February 19, 2018. *See* N.Y. Gen. Constr. § 25–a(1); *accord*, *e.g.*, *Sanders v. Chappius*, No. 12 CIV. 3339 BSJ JCF, 2012 WL 6756238, at *3 (S.D.N.Y. Nov. 9, 2012), *rep. and rec. adopted*, No. 12 CIV. 3339 BSJ JCF, 2013 WL 28471 (S.D.N.Y. Jan. 2, 2013).

F.3d 182 (2d Cir. 2004). The one-year limitations period expired on February 19, 2019, but Petitioner did not file his Petition until over a year later, on October 23, 2020.

Statutory tolling of the limitations period under 28 U.S.C. § 2244(d)(2) is unavailable because Petitioner did not collaterally challenge this conviction in state court. Equitable tolling likewise is unwarranted because Petitioner has not attempted to demonstrate the required "extraordinary circumstances," and none are apparent on the record before the Court. Ground Three must be dismissed as untimely.

**CONCLUSION**

For the foregoing reasons, the request for a writ of habeas corpus is DENIED, and the Petition, ECF No. 1, is DISMISSED. The Court DENIES a certificate of appealability ("COA") because Petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). With regard to the Court's merits-based rulings, Petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. With regard to the Court's procedural rulings, Petitioner has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

IT IS SO ORDERED.

Dated: April 12, 2021
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court